RichardsoN, J.
dissenting. — The Court have just decided the case of Clayton v. Kittrell, exhibiting how far Courts go, in supporting the verdict of juries, though given, as said in that case, by the Circuit Judge, “on very slight evidence.” But it must always be borne in mind, that this Court is the constitutional guardian of the laws of the State. And judicial respect for verdicts consists in allowing to juries their right to weigh and decide, on all competent evidence, and in supporting such verdicts as may be rationally inferred from the facts proved, and which do not mistake, pervert or infract, legal principles.
Within these principles, Judges go great lengths, in supporting the verdict of a jury. But jury justice, like all judicial justice, must be justified by the facts proved, and by established law; and verdicts, unsupported by the principles, and adopted merely as fit for the occasion, degrade the law, and greatly weaken general confidence in jury trials,
The case of Clayton v. Kittrell was intelligibly within *60 such principles; and we have now to decide, whether the verc[jC(; jn present case of Richardson v. the Provosts ought to be in like manner supported — that is to say, as far ag q. j. proves^ who alone now moves for a new trial, is concerned, and confining his motion to the $450 note given by his brother W. F. Provost, in their joint names, without the consent, or any agency, coming from C. J. Provost, and without any apparent interest in the negro, for whom that note was given.
When I ask, has there been any evidence of any authority whatever, given by him to his brother W. F. Provost, to sign his name to that note ? or where is there any evidence of his interest in the negro, for which that note was given ? my understanding can perceive none whatever. All the facts proved, are as follows, to wit: C. J. Provost was the brother of W. F. Provost. They were associated as partners in making cotton patent presses, and in nothing else. The $50 note was given by their agent Corbett, and very properly given, to James C. Richardson, for services in the copartnership business. W. F. Provost purchased a negro of J. C. Richardson, and gave the note of $450 in payment. In the course of the bargaining C. J. Provost went down with his brother to examine the negro. Afterwards W. F. Provost concluded the bargain, and gave the note in question in their joint names, in the absence of C. J. Provost, and took a bill of sale, the terms of which have not appeared. The negro was carried to Alabama, and remained in the possession of W. F. Provost, not of C. J. Provost. Where then, I ask, is there a single fact from which to conclude that C. J. Provost was interested in the negro' purchased by W. F. Provost 7 or that he had authorized him to sign the name of C. J. Provost to the note 7 There is not a single fact to authorize any such conclusion. The supposition that the bill of sale was given to both the Provosts is entirely gratuitous. W. F. Provost received it, and carried off the negro: and can it be said, with any reason, that the non-production of the bill of sale by W. F. Provost affords any reasonable presumption, that it had been given both to his brother and himself? This would be a mere imagination of what might possibly be. Rut on the contrary — it is plain, that W. F. Provost felt an interest in justifying his joint signature, and an evident pecuniary interest, as the verdict could not but be against himself, in making C. J. Provost also liable for, at least, one half of the amount, and hence he would not choose to produce a bill of sale taken in his own name alone. But take the evidence in the most ingenious and suspicious point of view, where is there to be found any evidence whatever to implicate C. J. Provost? There is not a tittle of any kind.
It is plain, therefore, that the verdict against C. JT. Provost *61 on the 450 dollar note, has been given on some imaginary fitness, and adapted to the occasion, without any evidence whatever. Is it a small matter, that one man should be thus allowed to subject another, by his unauthorized act, to his own liabilities, and ought not such a verdict to be set aside, as plainly injustifiable by the laws this Court is bound to protect ?
I cannot but think so. In the case of Clayton v. Kittrell, the jury were supported to the verge of their constitutional rights, but in the present instance they have clearly overstepped it — and I cannot consent, judicially, to affirm so unauthorized, so plunging a verdict, as to render one man liable for the note of another, because they were brothers, or because they were associated m a different transaction, or because they were jointly liable on a certain other note, or becaue the other man bought a negro and took a bill of sale, himself alone giving a note, in the name of both, or else because they both went down to examine the negro, before the bargain was concluded by the actual purchaser. The verdict upon the 450 dollar note, is given upon some confusion of mind, and the jury themselves are entitled to a reconsideration, and C. J. Provost to a new trial, notes; gratia, but ex de-bites, justicia.

Motion refused.